UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DR. BARRY SHAH, Plaintiff, | : | |
| v. | : | C.A. No. 07-016 ML |
| MARYLAND CASUALTY COMPANY, ZURICH-AMERICAN INSURANCE COMPANY AND ZURICH-AMERICAN INSURANCE COMPANY OF ILLINOIS, Defendants. | : | |

**DEFENDANT MARYLAND CASUALTY COMPANY'S[1]
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Now comes Defendant Maryland Casualty Company (also improperly named as Zurich-American Insurance Company and Zurich-American Insurance Company of Illinois), through counsel, and moves for partial summary judgment against Plaintiff Dr. Barry Shah, with regard to Counts Two, Three, Five, Six, Eight, Nine, Eleven and Twelve, in as much as those Counts have been asserted against improper party defendants. Defendant Maryland Casualty Company also moves for summary judgment with regard to Counts One through Twelve of Plaintiff's Complaint, with respect to Plaintiff's claim for "loss of income and interruption of the medical practice." Additionally, Defendant Maryland Casualty Company moves for summary judgment with regard to Counts Ten, Eleven and Twelve, which purport to state claims under R.I.G.L. § 9-1-45. In support of its Motion, Defendant relies upon the accompanying Memorandum of Law, as well as the exhibits and Affidavits appended thereto.

[1] Defendant Maryland Casualty Company is also improperly named in this action as Zurich-American Insurance Company and Zurich-American Insurance Company of Illinois. This Motion for Partial Summary Judgment is filed on behalf of all three named entities.

Defendant respectfully requests oral argument with respect to this Motion.

MARYLAND CASUALTY COMPANY
(Improperly named as ZURICH-AMERICAN INSURANCE COMPANY AND ZURICH-AMERICAN INSURANCE COMPANY OF ILLINOIS)

By Their Attorneys:

/s/ Dana M. Horton
Dana M. Horton, of
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: dhorton@rc.com
RI Bar No. 6251

Dated: November 1, 2007

**Certificate of Service**

I hereby certify that on November 1, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties noted below by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing for viewing and/or downloading through the Court's CM/ECF System.

Michael J. Lepizzera, Jr., Esq.
mlepizzera@lldlawyers.com
RI Bar No. 4995
Christian Potter, Esq.
cpotter@lldlawyers.com
Lepizzera & Laprocina
301 Metro Center Blvd., Suite 102
Warwick, RI 02886
(401) 739-7397 (Telephone)
(401) 384-6950 (Facsimile)

/s/ Dana M. Horton
Dana M. Horton, Esq.
RI Bar No. 6251

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DR. BARRY SHAH, Plaintiff, | : | |
| v. | : | C.A. No. 07-016 ML |
| MARYLAND CASUALTY COMPANY, ZURICH-AMERICAN INSURANCE COMPANY AND ZURICH-AMERICAN INSURANCE COMPANY OF ILLINOIS, Defendants. | : | |

**DEFENDANT MARYLAND CASUALTY COMPANY'S[1] MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Maryland Casualty Company (also improperly named as Zurich-American Insurance Company and Zurich-American Insurance Company of Illinois) (hereinafter "MCC" or "Defendant"), hereby submits the following Memorandum of Law in support of its Motion for Partial Summary Judgment.

## I. INTRODUCTION

This case involves a dispute over coverage for certain property loss arising out of water damage that occurred on or about December 21, 2004 (hereinafter "Loss"). Upon information and belief, Plaintiff was an owner of certain real property, located at 386 Atwells Avenue, Providence, Rhode Island (hereinafter "Property"). Defendant MCC issued a policy of insurance to Plaintiff (hereinafter "Policy"), bearing policy number PAS 00223943, with effective dates of coverage from November 1, 2004 to November 1, 2005. The Policy insured Plaintiff's Property

[1] Defendant Maryland Casualty Company is also improperly named in this action as Zurich-American Insurance Company and Zurich-American Insurance Company of Illinois. This Memorandum of Law in Support of Motion for Partial Summary Judgment is filed on behalf of all three named entities.

against certain risk of direct physical loss or damage, subject to the terms, conditions, limitations and exclusions set forth in said Policy.

Upon information and belief, prior to the date of Loss, Plaintiff and his business partner, Dr. Razer Shah, maintained two medical offices from wherein they ran a medical practice. *See* Transcript of Recorded Claims Statement given by Dr. Barry Shah, February 1, 2005, attached hereto as Exhibit A, p. 3. These offices were located at Two Dudley Street, Providence, Rhode Island and 386 Atwells Avenue (the latter being the subject Property). *See id.*. More than two months prior to the subject loss, the medical practice was relocated to the Two Dudley Street location. *See id.*, pp. 2-3; *see also* U.F. 21. In fact, patients were no longer being seen at the Property for more than two months prior to the subject loss. *See* Exhibit A, p. 3; *see also* U.F. 21. During that time, cosmetic repairs were being made to the Property. *See* Exhibit A, p. 3; *see also* U.F. 22. At some point, Plaintiff's partner decided to retire. *See* Exhibit A, p. 3. Dr. Shah explained that subject to the repairs being completed, his intent was to relocate his practice back to the Property, and to purchase his partner's share of the building, if feasible; if not financially feasible, the Property would have likely been put to sale. *See* Exhibit A, p. 4; *see also* U.F. 24.

On or about December 22, 2004, Plaintiff sustained a Loss to the subject Property when a water pipe froze and burst on the third floor. *See* Complaint, ¶ 12; *see also* U.F. 8. Upon notification of Plaintiff's claim, MCC conducted an investigation and paid certain amounts to Plaintiff for certain losses and damages that were found to be covered by the applicable insurance Policy. *See* U.F. 10. In his Complaint, Plaintiff contends that he has an outstanding claim for "property damage, loss of contents, storage costs, loss of income and interruption of the medical practice" stemming from this loss. *See* Complaint, ¶ 16. Counts One through Twelve incorporate this allegation by reference. *See* Complaint, Count One, ¶ 18; Count Two, ¶ 21;

Count Three, ¶ 24; Count Four, ¶ 27; Count Five, ¶ 31; Count Six, ¶ 35; Count Seven, ¶ 39; Count Eight, ¶ 44; Count Nine, ¶ 49; Count Ten, ¶ 54; Count Eleven, ¶ 58; and Count Twelve, ¶ 61. Plaintiff's counsel has clarified through discussions with the undersigned that the scope of Plaintiff's claim for damages as alleged under Paragraph 16 includes only the replacement value of seven (7) pieces of equipment, the cost of storage thereof, and a claim for loss of rental income over a twelve (12) month period.[2] *See* U.F. 11, 12 and 14. Counts One, Two and Three of the Complaint claim that the three named entities are in breach of contract. Counts Four, Five and Six claim that the three named entities breached the duty of good faith and fair dealing. Counts Seven, Eight and Nine assert a bad faith claim pursuant to R.I.G.L. § 9-1-33. Counts Ten, Eleven and Twelve attempt to state claims under R.I.G.L. § 9-1-45.

Defendant is entitled to summary judgment as to Counts Two, Three, Five, Six, Eight, Nine, Eleven and Twelve collectively, in that neither Zurich American Insurance Company nor Zurich-American Insurance Company of Illinois are proper party defendants in this case. Moreover, Defendant is entitled to summary judgment as to any and all claims made by Plaintiff with regard to loss of income and interruption of the medical practice, as set forth in Counts One through Twelve, because Plaintiff did not sustain any "actual" loss of income or business interruption, as required by the terms and conditions of the Policy. Lastly, Defendant is entitled to summary judgment as to Counts Ten, Eleven and Twelve, as it cannot be said that there is a complete absence of a justiciable issue of either law or fact in this case, given the Complaint, as worded, Defendant's Answer and Affirmative Defenses filed in response thereto, and the exhibits and Affidavits offered in support of this Motion.

[2] Defendant has recently made a demand for Appraisal under the provisions of the Policy, with regard to the Plaintiff's claim pertaining to the alleged remaining contents he claims were damaged as a result of the Loss and the storage costs associated therewith. A copy of Defendant's demand for Appraisal is attached hereto as Exhibit B.

## II. BACKGROUND FACTS AND TRAVEL

The relevant facts are set forth in Defendant's Rule 12.1 Statement of Material Facts Not In Dispute (hereinafter "Undisputed Facts" or "UF").

## III. ARGUMENT

### A. Summary Judgment Standard

A party seeking summary judgment must show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, the Court must view the facts on the record and all reasonable inferences therefrom in the light most favorable to the non-moving party. *See Cont'l Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Although the Court must examine the record in the light most favorable to the non-moving party, defeating a properly documented motion for summary judgment requires more than the "jingoistic brandishing of a cardboard sword." *Int'l Ass'n of Machinists v. Winship Green Nursing Ctr.*, 103 F.3d 196, 199-200 (1st Cir. 1996).

Initially, the burden in a summary judgment motion requires the moving party to aver "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets this burden, the onus falls upon the non-moving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) ("a genuine issue exists if there is sufficient evidence supporting this claimed factual dispute to require a choice between the parties' differing versions of the truth at trial."). To oppose the

motion successfully, the non-moving party "may not rest upon mere allegation or denials in his pleading." *Anderson*, supra, 477 U.S. at 256. The non-moving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the non-moving party." *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993). Moreover, the evidence presented by the non-moving party "cannot be conjectural or problematic; must have substance in the sense that it limits differing versions of the truth which a fact finder must resolve at an ensuing trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991).

**B. Standards For Interpreting Insurance Policies**

It is well settled in Rhode Island that a court "applies the rules for construction of contracts when interpreting an insurance policy." *Sjorgren v. Metropolitan Property and Casualty Ins. Co.*, 703 A.2d 608, 610 (R.I. 1997); *see also Mallane v. Holyoke Mutual Ins. Co. in Salem*, 658 A.2d 18, 19-20 (R.I. 1995). The language of an insurance policy must be viewed in its entirety, and given its "plain, ordinary and usual meaning." *Amica Mutual Ins. Co. v. Streicker*, 583 A.2d 550, 552 (R.I. 1990); *see also Bartlett v. Amica Mutual Ins. Co.*, 593 A.2d 45, 48 (R.I. 1991) ("the language of insurance policies is to be interpreted in accordance with the way it would be understood by the average man, rather than in a technical sense.").

**C. SUMMARY JUDGMENT IS APPROPRIATELY GRANTED AS TO THE ALLEGATIONS CONTAINED IN COUNTS TWO, THREE, FIVE, SIX, EIGHT, NINE, ELEVEN AND TWELVE, IN THAT THE ZURICH ENTITES ARE IMPROPER DEFENDANTS IN THIS CASE**

Defendant seeks an entry of summary judgment in its favor with regard to Counts Two, Three, Five, Six, Eight, Nine, Eleven and Twelve of Plaintiff's Complaint. Specifically, in that neither Zurich American Insurance Company nor Zurich-American Insurance Company of Illinois, wrote or issued the Policy involved in this case, they are improperly named defendants

in this action and should not have any liability imposed upon them with regard to Plaintiff's claims.

The applicable Policy of insurance involved in this case was issued by Defendant MCC. *See* Affidavit of Daina Kojelis, Esq. ("Kojelis Affidavit"), ¶ 18, attached hereto. As set forth in the Kojelis Affidavit, MCC is a wholly owned subsidiary of Zurich American Insurance Company. *See id.*, ¶ 7. Zurich-American Insurance Company of Illinois is a wholly owned subsidiary of Zurich American Insurance Company. *See id.*, ¶ 8. Zurich American Insurance Company is a wholly owned subsidiary of Zurich Holding Company of America, Inc. *See id.*, ¶ 9. Zurich Holding Company of America, Inc. is a 99.8711% owned subsidiary of Zurich Insurance Company, a Swiss corporation. *See id.*, ¶ 10. Zurich Insurance Company is a wholly owned subsidiary of Zurich Holding Group, a Swiss corporation. *See id.*, ¶ 11. Zurich Holding Group is owned 43% by Allied Zurich p.l.c. and 57% by Zurich Financial Services. *See id.*, ¶ 12. Allied Zurich p.l.c. is a wholly owned subsidiary of Zurich Financial Services. *See id.*, ¶ 13.

Attorney Kojelis further avers by way of her Affidavit that subsidiaries of Zurich American Insurance Company are permitted to refer to the "Zurich" name as a method of referring to all of the insurance companies owned by Zurich American Insurance Company. *See id.*, ¶ 14. Moreover, all insurance policies issued by companies owned by Zurich clearly state which company owned by Zurich American Insurance Company is the actual issuing company for the particular policy. *See id.*, ¶ 15. MCC is, and was at the time the subject Policy was issued, authorized to conduct business in the State of Rhode Island and licensed by the Department of Business Regulation to conduct business in the State of Rhode Island as a

property and casualty insurance company. *See id.*, ¶ 17. MCC, as a subsidiary of Zurich American Insurance Company, issued the Policy involved in this case. *See id.*, ¶ 18.

The Policy itself further confirms this testimony. (A complete copy of the Policy is attached hereto as Exhibit C). The cover page of the Policy has the MCC name in capitol letters, followed by the address for its administrative offices, in the upper center portion of the page. *See* Kojelis Affidavit, ¶ 19; *see also* Exhibit C. The cover page further notes that the Policy is for Dr. Barry Shah and lists an address of 386 Atwells Avenue, Providence, Rhode Island. *See* Kojelis Affidavit, ¶ 20; *see also* Exhibit C. The cover page notes that the Policy was issued by MCC through local agent, W.A. Capuano, Inc. *See* Kojelis Affidavit, ¶ 21; *see also* Exhibit C. On the Common Declarations Page for the Policy, MCC's full name similarly appears in all capitol letters in the upper center portion of the page. *See* Kojelis Affidavit, ¶ 22; *see also* Exhibit C. Additionally, the MCC name appears in the title portion of the schedule of forms and endorsements applicable to the Policy. *See* Kojelis Affidavit, ¶ 23; *see also* Exhibit C. The "Zurich" name and emblem appear in the upper right-hand corner of the cover page, declarations pages, schedule of forms and endorsements and the Fungi or Bacteria Exclusion Endorsement (Form U-GL-1171-A-CV (7/03)). *See* Kojelis Affidavit, ¶ 24; *see also* Exhibit C.

In light of the foregoing, it is clear that MCC is the proper party defendant to this action. *See generally*, *LaPlante v. OneBeacon Ins. Group*, 2006 WL 3004750, Slip Op. (D.R.I., October 20, 2006) (granting summary judgment in favor of defendant where improper insurance company was named as party defendant) (copy attached as Exhibit D). In that neither Zurich American Insurance Company nor Zurich-American Insurance Company of Illinois are proper party defendants to this action and Plaintiff has refused or neglected to withdraw against these

parties or to otherwise remove these parties from the litigation, summary judgment is properly granted in their favor based upon the facts as set forth herein.

### D. SUMMARY JUDGMENT IS APPROPRIATELY GRANTED TO THE REMAINING ALLEGATIONS PERTAINIGN TO LOSS OF RENTAL INCOME WHERE, AS HERE, THERE WAS NO "ACTUAL" LOSS OF INCOME

MCC provided a Commercial General Liability and Building and Personal Property policy of insurance to Plaintiff bearing Policy No. PAS 00223943, and covering the period November 1, 2004 through November 1, 2005 (hereinafter "Policy"). *See* U.F. 5; *see also* Exhibit C. The Building and Personal Property Coverage portion of the Policy contained a provision, *inter alia,* pertaining to the actual loss of business income, which applied to certain losses pursuant to the terms, conditions, limitations and exclusions of the Policy. *See* U.F. 6; *see also* Exhibit C. The applicable business income provision, as contained in the aforementioned Policy, provides as follows:

> **III. ADDITIONAL COVERAGES**
>
> The following Additional Coverages apply only if they are indicated in the Declarations:
>
> A. **Business Income and Extra Expense –**
> We will pay for the actual loss of "business income" you sustain due to the necessary suspension of "operations" during the "period of restoration," but not to exceed 12 consecutive months. The suspension must be caused by direct physical loss of or damage to property at the "described premises," including personal property in the open, or in a vehicle, within 1000 feet, caused by or resulting from a Covered Cause of Loss.
>
> * * *

Exhibit C, Building and Personal Property Coverage Form, p. 13; *see also* U.F. 17. The phrase "Business Income" is defined by the Policy as the:

> 1. Net income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

2. Continuing normal operating expenses incurred, including payroll if there had been no direct physical loss or damage.

Exhibit C, Building and Personal Property Coverage Form, p. 24. The term "Operations" is defined by the Policy as "your business activities occurring at the 'described premises.'" Exhibit C, Building and Personal Property Coverage Form, p. 26.

Accordingly, per the language of the Policy, coverage for business income is available where there is an "***actual*** loss" of business income sustained by an insured during the period of restoration, not to exceed twelve consecutive months. In this case, it is undisputed that the loss location was not being used to see patients for at least two months prior to the Loss. *See* U.F. 21; *see also* Affidavit of Daniel Sager ("Sager Affidavit"), appended hereto, ¶ 11. Sager was an independent insurance adjuster charged with the performance of an investigation and inspection into Plaintiff's claims of loss in this case. *See* Sager Affidavit, ¶¶ 4-5. As a part of his investigation into Plaintiff's claims, Sager spoke directly with Plaintiff, as well as with his Public Adjuster, and reviewed the transcript of Plaintiff's recorded statement, which was taken on February 1, 2005 by Sager's former colleague, William Brady. *See* Sager Affidavit, ¶¶ 6, 13. During his recorded statement, Plaintiff indicated that he and his partner had relocated their medical practice to the Two Dudley Street location prior to the Loss and were having certain repair work done at the Property. *See* U.F. 21, 22; *see also* Sager Affidavit, ¶ 8. Immediately prior to the Loss, Plaintiff was not seeing or treating patients at the Property. *See* U.F. 21; *see also* Sager Affidavit, ¶ 11. Plaintiff had not decided if he would be able to relocate the medical practice back to the Property after the repairs were complete and his partner retired, or if he would be compelled to sell the Property when his partner retired. *See* U.F. 24; *see also* Sager Affidavit, ¶ 13. Nonetheless, as a part of his claim, Plaintiff seeks to be paid under the Business

Income provisions of the Policy, noted above, for rental income he claims that he *may have obtained* had the Loss not occurred and had he rented out the Property to a tenant.

Through his investigation, Sager verified and confirmed that Plaintiff did not sustain any loss of business income relative to the Property, nor did he sustain a loss of rental income from the Property, stemming from the Loss. *See* Sager Affidavit, ¶ 10. As a part of his investigation, Sager confirmed to the best of his knowledge that prior to the Loss, Plaintiff had never rented out the Property and had no intent or plan to rent out the Property once the renovations were complete. *See* Sager Affidavit, ¶¶ 14-16. In that Plaintiff did not sustain *any* actual loss of income or business interruption as a result of the Loss, (namely, because at the time of the loss there were no business operations taking place at the Property, nor was there any specific plan or intent to rent out the Property), Defendant is entitled to summary judgment as to this aspect of Plaintiff's claim.

It is well-settled that the root purpose of insurance is indemnity. *See Ryan v. Royal Ins. Co. of America*, 916 F.2d 731, 739 (R.I. 1990), citing 3 G. Couch, *Cyclopedia of Insurance Law*, § 24:12 (2d ed. 1982). "It follows, then, that insurance contracts ought to be interpreted and enforced consistent with the aim of conferring a benefit on the insured equal to-but certainly no greater than-the actual loss sustained." *Ryan v. Royal Ins. Co. of America, supra*, citing R. Keeton & A. Widess, *Insurance Law: A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices*, § 3.1(a) (1988); W. Vance, *Handbook on the Law of Insurance*, § 14 (3d ed. 1951); 4 J. Appleman, *Insurance Law and Practice* § 2125, at 47 (1981). "Put another way, the legitimate object of insurance is to provide reimbursement for loss-and nothing more. To the extent that an insured may obtain insurance proceeds greater than the actual loss sustained, the insurance contract runs afoul of public policy." *Ryan v. Royal Ins. Co. of America, supra*, citing

R. Keeton & A. Widess, *supra*, § 3.1(c); W. Vance, *supra*, § 14, at 102; 4 J. Appleman, *supra*, § 2121, at 27-28.

> The essential nature and purpose of business interruption insurance is to protect the earnings which the insured would have enjoyed had there been no interruption of the business; in other words, *the purpose of business interruption coverage is to do for the business what the business would have done for itself had no interruption occurred* . . . .
>
> * * *
>
> *In order to fix the amount of business interruption loss the court must look to the insured's past performance.*
>
> * * *
>
> Before an insured may recover loss of sales . . . under a business interruption policy, it must establish *actual* loss.

(Emphasis added.) Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3D* § 185:1, pp. 185-9 – 185-10 (1998).

The undisputed facts of the present case demonstrate that Plaintiff had relocated his medical practice to another location more than two months prior to the Loss, was not seeing any patients at the Property immediately prior to the Loss, had never rented out the Property, and had no intent to rent out the Property. Rather, as explained by Plaintiff himself, once the pre-Loss cosmetic repairs to the Property were complete, Plaintiff had planned to either buy out his partner's share of the Property and relocate the medical practice back to that office or, if not financially feasible, the Property likely would have been put to sale. *See* Exhibit A, p. 4; *see also* U.F. 24. Accordingly, for Plaintiff to now claim that he would or could have rented out the Property had the Loss not occurred and that he would or could have obtained a certain amount of rental income but for the Loss, is disingenuous and nothing more than mere speculation.

More importantly, however, there are no provisions in the Policy pertaining specifically to loss of rental payments. *See* Exhibit C; *see also* Sager Affidavit, ¶¶ 18-19. Plaintiff seeks to broaden the application of the Policy language quoted above, relative to loss of business income and business interruption, to have same applied to the loss of rent payments he claims *he would have sustained* over the course of the twelve-month period while repairs were made to the Property after the Loss. However, the undisputed facts are that Plaintiff *never* rented out this Property to a tenant prior to the Loss and *had no express intent to do* so post-Loss. In fact, his claim that he would have/could have rented out the Property post-Loss directly contradicts the Recorded Statement he provided to his insurer, wherein he stated that depending on the results of the market analysis, his intent was either to relocate his practice back to the Property and buy out his partner's share in the Property, or to sell the Property. *See* U.F. 24. There was no actual loss of business income at the Property as a result from the Loss. *See* Sager Affidavit, ¶ 10. There was no actual loss of rental income at the Property as a result from the Loss. *See* Sager Affidavit, ¶ 10. There was no specific intent to rent the Property at any time prior to the Loss. *See* Sager Affidavit, ¶¶ 14-15. As such, there can be no recovery under the Business Income provisions of the Policy, for rental income that Plaintiff now post-loss claims that he *may have obtained* had the Loss not occurred and had he made a decision to rent out the Property to a tenant. For these reasons, Defendant is entitled to summary judgment as to this aspect of Plaintiff's claim.

To the extent that Defendant is successful with regard to this portion of its Motion and summary judgment is granted in its favor with regard to the remaining portion of the breach of contract claims (absent that portion of said claims which are being submitted to the appraisal process), then summary judgment is also appropriate with respect to those remaining counts

asserting breach of the duty of good faith and fair dealing (Counts Four through Six) and statutory bad faith (Counts Seven through Nine), in that Plaintiff has failed to allege any separate and distinct factual allegations in support of said claims[3] and has not demonstrated or alleged an absence of a reasonable basis in law or fact for the insurer not paying the remainder of the claim, or an intentional or reckless failure to properly investigate the claim and subject the result to cognitive evaluation. *See e.g., Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1012 (R.I. 2002).

## E. SUMMARY JUDGMENT IS PROPERLY GRANTED AS TO COUNTS TEN, ELEVEN AND TWELVE IN THAT A JUSTICIBLE ISSUE OF FACT OR LAW EXISTS

As a final ground for summary judgment, Defendant seeks an entry of summary judgment as to Counts Ten, Eleven and Twelve of Plaintiff's Complaint. These Counts seen an award of attorney's fees pursuant to R.I.G.L. § 9-1-45. R.I.G.L. § 9-1-45 provides as follows:

> Attorney's fees in breach of contract actions. The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court:
>
> (1) Finds that there was a complete absence of a justicible issue of either law or fact raised by the losing party; or

[3] In Counts Four through Six, Plaintiff has incorporated by reference the allegations contained in the breach of contract claims (Counts One through Three) and claims that based upon these allegations, Defendant has breached the duty of good faith and fair dealing. *See* Complaint, Counts Four, Five and Six. In Counts Seven through Nine, Plaintiff has again incorporated by reference the allegations contained in the breach of contract claims and claims that Defendant breached the duty of good faith by "failing to timely compensate Dr. Shah for his losses." *See* Complaint, Count Seven, ¶ 41; Count Eight, ¶ 46; and Count Nine, ¶ 51. As such, Plaintiff claims that the actions complained of amount to statutory bad faith, in violation of R.I.G.L. § 9-1-33. In that Plaintiff has clarified that the breach of contract claims include (1) an outstanding claim for seven pieces of equipment and the continued storage thereof, and (2) lost rental income, and in that Defendant has demanded appraisal pursuant to the Policy with regard to the issue surrounding the seven pieces of equipment and storage fees associated therewith, and moved for summary judgment as to the rental income claim, the timeliness of the payment with regard to these remaining claims is not a material fact that should preclude the entry of summary judgment with respect to Plaintiff's claims of bad faith, as alleged in Counts Four through Nine. The Rhode Island Supreme Court has stated that "bad faith is established when the proof demonstrates that the insurer denied coverage or refused payment without a reasonable basis in fact or law for the denial." *Skaling v. Aetna Ins. Co.*, supra, 799 A.2d 1010. The Court also noted that "[t]he appropriate inquiry is whether there was sufficient evidence from which reasonable [minds] could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." (Internal quotation marks omitted.) *Id.*, 1011. Should summary judgment enter with respect to the remaining breach of contract claims, Plaintiff has not alleged any additional facts sufficient to support either a claim of common law or statutory bad faith in this case.

(2) Renders a default judgment against the losing party.

R.I.G.L. § 9-1-45. The Rhode Island Supreme Court has held that so long as an arguable point of either law or fact supports the non-movant's position, a trial court may properly reject the movant's request for reasonable attorney's fee. *See Bucci v. Anthony*, 667 A.2d 1254, 1256 (R.I. 1995). The Court can conclude that justiciable issues have been presented even when the evidence in support of those issues is eventually proven to be legally insufficient. *See UXB Sand & Gravel, Inc. v. Rosenfield Concrete Corp.*, 641 A.2d 75, 80 (R.I. 1994); *see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 66 F.Supp.2d 317, 331 (D.R.I. 1999) (concluding that although the defendant was unsuccessful it its efforts, it had an arguable defense and raised a justiciable issue sufficient to defeat plaintiffs' claim for attorneys' fees pursuant to R.I.G.L. § 9-1-45).

In the case at bar, based upon the allegations of Plaintiff's Complaint, the allegations asserted by way of Defendant's Answer and Affirmative Defenses, and the undisputed facts asserted by way of the evidence, exhibits and Affidavits accompanying this Motion for Summary Judgment, it simply cannot be said that there is "a complete absence of a justiciable issue of either law or fact." Plaintiff's claims assert allegations of breach of contract, breach of the duty of good faith and fair dealing, and statutory bad faith, with respect to coverage under the underlying Policy of insurance. Defendant has filed an Answer and Six Affirmative Defenses on its behalf. These pleadings make clear that there are justiciable issues inherent in this case. Moreover, the Sager and Kojelis Affidavits submitted in support of this Motion, as well as Plaintiff's Recorded Statement (Exhibit A), the Policy itself (Exhibit C), and the demand for appraisal, highlight the fact that there are justiciable issues inherent in this case.

Furthermore, arguably the more accurate procedural vehicle to obtain attorney's fees pursuant to R.I.G.L. § 9-1-45 is by way of a post-judgment Motion for Attorney's Fees, as opposed to raising said claim by way of separate counts in the Complaint. To that end, in that one requirement of either section of § 9-1-45 is that a *judgment* enter against one party, the only reasonable interpretation of the application of this statute is that it is meant to apply to the post-judgment process. Moreover, it would not appear to be the type of issue or claim that would be submitted to the jury to make such a determination. As such, these claims are better made to the Court by way of post-judgment motion, as opposed to separate counts in the Complaint. Accordingly, summary judgment should be rendered in favor of Defendant as to Counts Ten, Eleven and Twelve.

## IV. <u>CONCLUSION</u>

For the reasons set forth herein, Defendant Maryland Casualty Company (also improperly named as Zurich-American Insurance Company and Zurich-American Insurance Company of Illinois), hereby respectfully moves for partial summary judgment as to Counts Two, Three, Five, Six, Eight, Nine, Eleven and Twelve of Plaintiff's Complaint in that Zurich American Insurance Company and Zurich-American Insurance Company of Illinois are not proper party defendants to this action. Additionally, Defendant seeks an entry of summary judgment as to Plaintiff's claims of recovery for loss of rental income as alleged in Counts One through Twelve of Plaintiff's Complaint. Lastly, Defendant seeks an entry of summary judgment as to Counts Ten, Eleven and Twelve in that there is are justiciable issues involved in this case such that attorneys' fees pursuant to § 9-1-45 are not warranted. Also, the counts brought pursuant to § 9-1-45 are arguably premature and more properly presented as post-judgment Motions for Attorney's Fees.

MARYLAND CASUALTY COMPANY
(Improperly named as ZURICH-AMERICAN INSURANCE COMPANY AND ZURICH-AMERICAN INSURANCE COMPANY OF ILLINOIS)

By Their Attorneys:

/s/ Dana M. Horton
Dana M. Horton, of
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: dhorton@rc.com
RI Bar No. 6251

Dated: November 1, 2007

**Certificate of Service**

I hereby certify that on November 1, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties noted below by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing for viewing and/or downloading through the Court's CM/ECF System.

Michael J. Lepizzera, Jr., Esq.
mlepizzera@lldlawyers.com
RI Bar No. 4995
Christian Potter, Esq.
cpotter@lldlawyers.com
Lepizzera & Laprocina
301 Metro Center Blvd., Suite 102
Warwick, RI 02886
(401) 739-7397 (Telephone)
(401) 384-6950 (Facsimile)

/s/ Dana M. Horton
Dana M. Horton, Esq.
RI Bar No. 6251