UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

Dr. Barry Shah
Plaintiff

vs. C.A. No.: 07-016 ML

Maryland Casualty Company;
Zurich-American Insurance Company; and
Zurich-American Insurance Company
of Illinois

Defendants

**PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Now comes the plaintiff, Dr. Barry Shah (hereinafter "plaintiff" or "Dr. Shah") and hereby objects to defendants' motion for partial summary judgment. In support of said objection, the plaintiff relies upon the accompanying Memorandum of Law, as well as the exhibits and affidavit of Dr. Barry Shah appended thereto.

Plaintiff, Dr. Barry Shah
By and through his Counsel
/s/ Michael J. Lepizzera, Jr.
Michael J. Lepizzera, Jr. #4995
Mlepizzera@lldlawyers.com
/s/ Christian C. Potter
Christian C. Potter, #5359
Cpotter@lldlawyers.com
Lepizzera & Laprocina
301 Metro Center Blvd., #102
Warwick, Rhode Island 02886
(401) 739-7397 (Telephone)
(401) 384-6950 (Facsimile)

**CERTIFICATION**

I certify that on this 19th day of November, 2007 a true and accurate copy of the within was filed electronically and it is available for viewing and downloading from the ECF System. Further I certify that that the undersigned were served with a copy of said motion electronically:

Dana Horton #6251.
dhorton@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103
(860) 275-8295 (Telephone)
(860) 275-8299 (Facsimile)

/s/ Christian C. Potter

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

---

Dr. Barry Shah
Plaintiff

vs. C.A. No.: 07-016 ML

Maryland Casualty Company;
Zurich-American Insurance Company; and
Zurich-American Insurance Company
of Illinois

Defendants

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS OBJECTION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Now comes the plaintiff, Dr. Barry Shah (hereinafter "plaintiff" or "Dr. Shah") and hereby submits the following Memorandum of Law and attached affidavit in support of his objection to the defendants' motion for partial summary judgment.

I. Travel of the Case:

The plaintiff, Dr. Shah, was the owner of a piece of property located at 386 Atwells Avenue, Providence, Rhode Island (hereinafter the "Property"). *See Dr. Shah affidavit ¶4 attached hereto (hereinafter "Shah Affidavit").* Dr. Shah and his partner, Dr. Reza Shah, had been the owners of the property and partners in their medical practice. *See Shah Affidavit ¶ 3.* They operated their medical practice from two locations, the first location was the Property and the second location was a leased suite located at 2 Dudley Street, Providence, Rhode Island. *See Shah Affidavit ¶ 3.* With respect to the Property, Dr. Shah operated and conducted his medical practice in the building at the Property, he examined and treated patients at the Property, he maintained an

administrative staff at the Property, he retained his client's medical records at the Property and he operated and stored the necessary medical equipment to operate his practice at the Property. *See Shah Affidavit* ¶ *6.*

Dr. Shah had purchased an insurance policy from Maryland Casualty Company, Zurich American Insurance Company and Zurich American Insurance Company of Illinois (hereinafter the "defendants") in 2004 to insure against any potential risks and losses at the Property where he conducted his medical practice. *See Shah Affidavit* ¶ *7.* The insurance policy was issued by same bearing policy number PAS 00223943 with an effective time period from 12:01 a.m. on November 1, 2004 to 12:01 a.m. on November 1, 2005 (hereinafter referred to as the "Policy"). *See Shah Affidavit* ¶ *7.*

On or about October 2004, Dr Shah had decided to renovate the Property to address some of the issues that had arisen there. *See Shah Affidavit* ¶ *10.* The renovations involved repairing a small leak in the roof, replacing some ceiling tiles, painting the interior, replacing wallpaper, replacing window panes, replacing some of the carpeting and repaving the parking lot. *See Shah Affidavit* ¶ *9.* The reason for the renovation was based on Dr. Shah's business partner Dr. Reza Shah's decision to retire. *See Shah Affidavit* ¶ *10.* As the practice would be reduced to one physician, Dr. Shah planned to renovate the Property and move his entire practice there as he owned the Property and would no longer need the second location. *See Shah Affidavit* ¶ *10.*

Initially, Dr. Shah was able to continue to see patients during the renovations. However, on or about October 11, 2004, Dr. Shah made the decision to stop seeing patients at the Property based on the fact that the renovation was becoming too much of an inconvenience to his patients and affecting his ability to practice medicine. *See Shah*

*Affidavit* ¶ *11.* Therefore, Dr. Shah stopped practicing at the Property with the intention of reopening his practice in January 2005. *See Shah Affidavit* ¶¶ *11 & 15.*

On or about December 21, 2004, Dr. Shah suffered a loss at the Property as a result of the pipes freezing and bursting in the midst of a cold winter night. *See Shah Affidavit* ¶¶ *12& 14.* The building that he used to operate his practice sustained heavy water damage resulting in significant property damage to the building and the contents therein. *See Shah Affidavit* ¶ *13.* The contents that were damaged were the medical equipment that Dr. Shah used to operate his practice at the Property. *See Shah Affidavit* ¶ *13.* This loss occurred approximately two weeks prior to Dr. Shah commencing his practice at the Property. *See Shah Affidavit* ¶ *15.*

The policy issued by the defendants covered the loss sustained by Dr. Shah and included coverage for the structural damage to the building, the damage to the property, the contents located on the premises and the interruption of Dr. Shah's medical practice. *See Shah Affidavit* ¶ *17.*

As the damage to the property was extensive, Dr. Shah unable to reopen his medical practice in the building in January 2005 as he had intended. *See Shah Affidavit* ¶ *15.* Dr. Shah was left with no other alternative than to continue his monthly lease of the suite located at 2 Dudley Street, Providence, Rhode Island. *See Shah Affidavit* ¶ *15.*

The work to repair the damage to the building located at 386 Atwells Avenue, Providence, Rhode Island was not completed until more than a year later. *See Shah Affidavit* ¶ *16.* On or about April 30, 2005, due to the delays and the failure of the insurance company to act in a timely fashion, Dr. Shah was forced to vacate the suite that he leased at 2 Dudley Street, Providence, Rhode Island. *See Shah Affidavit* ¶ *16.* As his

Property was still not ready to be occupied, he was forced to enter into a new lease for a different suite at the property located at 2 Dudley Street, Providence, Rhode Island. *See Shah Affidavit ¶ 16.* The new lease was a five (5) year commitment. *See Shah Affidavit ¶ 16.*

After an extensive investigation of my claim, Maryland Casualty Company paid the amount of $286,819.78 with respect to the loss that occurred on December 21, 2004. *See Shah Affidavit ¶ 17.* As a result of the covered loss, Dr. Shah incurred a major interruption in his medical practice. *See Shah Affidavit ¶ 17.* Further, Dr. Shah has incurred the following additional expenses: the cost of extending the lease of the suite located at 2 Dudley Street, Providence, Rhode Island, the costs of additional utility costs from operating the property located at 2 Dudley Street, and the loss of business that resulted from him having to permanently move his practice from the property located at 386 Atwells Avenue, Providence, Rhode Island. *See Shah Affidavit ¶ 18.* More specifically, Dr. Shah was unable to provide outpatient surgical services that were impossible to perform at the smaller office that he leased at 2 Dudley Street, Providence, Rhode Island. *See Shah Affidavit ¶ 19.* And as a result of this, Dr. Shah's gross revenues decreased from over $800,000.00 in the year 2004 to $486,090 in 2005 and $393,639 in 2006. *See Shah Affidavit ¶ 20.*

At all time relevant to the investigation of the claim, Dr. Shah has fully complied with the terms and conditions of the policy and he has also fully cooperated with the defendants' investigation of the loss. *See Shah Affidavit ¶ 21.* The defendants have acknowledged coverage for the loss sustained by Dr. Shah. *See Defendant's Exhibit B, Sager Affidavit ¶ 22* and *defendant's Memorandum in Support of its Motion for Partial*

*Summary Judgment.* The defendants have compensated Dr. Shah for the damage to the building. However, the defendants have knowingly, intentionally, and willfully refused without any reasonable basis in fact or law to timely compensate or otherwise make Dr. Shah whole for all of his damages that he sustained as a result of the loss. Further, Dr. Shah has had to incur additional expenses including but not limited to storage fees for the contents and attorney fees in maintaining this action.[1] *See Shah Affidavit* ¶¶¶ *18, 19 & 20.*

II. Summary Judgment Standard:

Summary Judgment by its very nature is a drastic remedy and one that should only be granted when the party opposing such a motion is unable to meet his/her affirmative duty to establish the existence of a genuine factual dispute through the presentation of competent evidence. *See* Fed.R.Civ.P. 56. "In general, these cases require that a party seeking summary judgment make a preliminary showing that no genuine issue of material fact exists. Once the movant had made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." *National Amusements Inc. vs. Town of Dedham, 43 F.3d 731 citing Celotex Corp. V. Catrett, 477 U.S. at 324, 106 S.Ct. at 2553.* "To satisfy the criterion of trialworthiness, and thereby forestall summary judgment, an issue must be "genuine," that is, the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion." Id.

[1] As of the date of this response, the defendant Maryland Casualty Company has exercised its right under the policy to demand appraisal for the seven (7) items that the plaintiff has not been compensated for. The demand for appraisal comes almost three (3) years from the initial date of the loss.

III. Argument:

**A. THE PLAINTIFF VOLUNTARILY AGREES TO DISMISS THE COMPLAINT AGAINST ZURISCH-AMERICAN INSURANCE COMPANY AND ZURICH-AMERICAN INSURANCE COMPANY OF ILLINOIS**

The defendants have moved for summary judgment against the plaintiff with respect to Counts Two, Three, Five, Six, Eight, Nine, Eleven and Twelve based on the claim that those counts have been asserted against improper party defendants. The defendants argue that defendants Zurich-American Insurance Company and Zurich-American Insurance Company of Illinois were not the company who wrote or issued the policy of insurance that was purchased by Dr. Shah. In support of their argument, the defendants have offered the affidavit of Daina Kojelis, Esquire. In her affidavit, Attorney Kojelis proffers that the proper defendant in this matter is Maryland Casualty Company (hereinafter "MCC"). *See Kojelis Affidavit* ¶*18.* More specifically, Attorney Kojelis states in paragraph 18 of her affidavit "[t]he policy of insurance and endorsements thereto under which Plaintiff makes his claim were issued by MCC." *See Kojelis Affidavit* ¶*18.* As the defendants have admitted that MCC is the proper party in this matter, the plaintiff voluntarily agrees to dismiss his complaint against Zurich-American Insurance Company and Zurich-American Insurance Company of Illinois.

**B. THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PERTAINING TO THE LOSS OF INCOME AND BUSINESS INTERRUPTION AS SET FORTH IN COUNTS ONE THROUGH TWELVE OF THE PLAINTIFF'S COMPLAINT SHOULD BE DENIED.**

The defendant[2] has moved for summary judgment pertaining to the plaintiff's claim for loss of income and business interruption as set forth in Counts One through Twelve of the complaint. In support of its argument, the defendant argues that the plaintiff has not suffered an actual loss of rental income from the Property stemming from the loss and therefore he is not entitled to recover. In support of this argument, the defendant has cited Couch on Insurance stating that "[b]efore an insured may recover loss of sales…under a business interruption policy, it must establish actual loss. *Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3D §185:1, pp. 185-9-185-10 (1998).*

The Commercial General Liability and Building and Personal Property policy of insurance issued by the defendant to the plaintiff contained a provision pertaining to the actual loss of business income. *See Defendant's Exhibit C, Building and Personal Property Coverage Form, pg. 13.*

The applicable business income provision provided as follows:

*III. ADDITIONAL COVERAGES*

*The following Additional Coverages apply only if they are indicated in the Declarations:*

*A. Business Income and Extra Expense:*

*We will pay for the actual loss of "business income" you sustain due to the necessary suspension of "operations" during the "period of restoration", but not to exceed 12 consecutive months. The suspension must be caused by a direct physical loss of or damage to property at the "described premises" including personal property in the open, or in a vehicle, within 1000 feet, caused by or resulting from a Covered Cause of loss*

---

[2] As the plaintiff has agreed to dismiss the case against Zurich-American Insurance Company and Zurich-American Insurance Company of Illinois, the only defendant remaining in the lawsuit is Maryland Casualty Company.

*See Defendant's Exhibit C, Building and Personal Property Coverage Form, pg. 13.*

The definition of "Business Income" as stated on page 24 is as follows:

*B. "Business Income" means the :*

1. *Net income (Net profit or Loss before income taxes) that would have been earned or incurred; and*
2. *Continuing normal operating expenses incurred, including payroll if there had been no direct physical loss or damage.*

*See Defendant's Exhibit C, Building and Personal Property Coverage Form, pg. 13.*

Business income coverage is designed to protect an insured from business interruption by compensating an insured for what the business would have done had no loss occurred. In order to have a valid claim for business income coverage, an insured must first prove that his property had a direct property damage loss. It is undisputed that Dr. Shah had a direct property damage loss at his Property that was covered by the Policy provided by the defendant. *See Defendant's Exhibit B, See Sager Affidavit* ¶ *22* and *defendant's Memorandum in Support of its Motion for Partial Summary Judgment.* In the affidavit of Daniel Sager, the defendant has admitted that "Maryland Casualty Company paid to or on behalf of Plaintiff the amount of $286,819.78 with regard to his claim for damages sustained to his building and many of the buildings contents as a result of the loss." *See Sager Affidavit* ¶ *22.* Therefore, Dr. Shah has met the first hurdle with respect to his claim for loss of income and interruption of his medical practice.

Once an insured has met the burden of establishing that he had a direct property damage loss that was covered by his/her/its insurance, the insured must then prove that he/she/it had an actual loss of "Business Income" as defined under the policy.

In his complaint, Dr Shah has made a claim for breach of contract against the defendant.[3] *See Complaint, Count I, pgs 4-5*. The breach of contract claim is based on the defendant's failure to compensate Dr. Shah for the damages that he sustained as a direct result of a loss that was covered under the Policy. More specifically, Dr. Shah has alleged the following two paragraphs:

> *12. Dr Shah suffered a loss at the property on December 21, 2004 as a result of pipes freezing and bursting in the midst of a cold winter night. The building located on the property sustained heavy water damage resulting in significant property damage to the building and the contents therein.* ***Dr. Shah was unable to operate a medical practice as a result of this water damage loss****. (emphasis added)*

> *13. The policy issued by the Defendants covered the December 21, 2004 loss sustained by Dr. Shah including but not limited to the structural damage to the building, the damage to the property and contents located on the premises****, loss of income and the interruption of Dr. Shah's business****.(emphasis added)*

*See Plaintiff's Complaint at pg 3.*

The defendant has made the argument to this Honorable Court that Dr. Shah is not entitled to recover under his claim for rental income. The plaintiff suggests that this is a very myopic interpretation of the business income damage claim that the plaintiff has presented in his complaint. The defendant has clearly asserted a claim for "loss of income" and "the interruption of Dr. Shah's business" as he was "unable to operate a medical practice as a result of this water damage loss". *See Plaintiff's Complaint at pg 3.*

This summary judgment motion really turns out to be a battle over semantics. The battle is over whether his loss of business income claim should be termed a loss of income or loss of rental income. The defendant has argued in its motion that Dr. Shah is

[3] Dr. Shah has made several claims against the defendant MCC. However, for the purposes of responding to the defendant's summary judgment motion, the only claim that is relevant to this discussion is the breach of contract claim.

not entitled to loss of rental income at the property. In reviewing the case law and the defendant's motion, the plaintiff would agree with the defendant. However, the plaintiff would assert that under the terms and conditions of the Policy he is entitled to loss of income as a result of the interruption of his business at the Property. *See Defendant's Exhibit C, Building and Personal Property Coverage Form, pg. 13.* The fact that Dr. Shah had intended to reopen his practice at the Property and was unable to do so because of the "necessary suspension of operations" during the "period of restoration" is the "material fact" that is not in dispute in this matter. *See Shah Affidavit ¶ 10, 15 & 16.* The parties can argue over whether you would call the damages either loss of rental income or loss of income; however, the parties cannot argue that Dr. Shah had a covered loss at the property which resulted in the "necessary suspension" of Dr. Shah's medical practice which caused Dr. Shah to suffer business income damages.

The defendant also argues that because Dr. Shah had relocated his practice to another location, more than two months prior to the Loss, he is not entitled to make a claim for damages based on loss of business income. This statement is absolutely untrue and irrelevant to this case. In his attached affidavit, Dr. Shah states that he moved his practice for a period of approximately two months to accommodate his patients during his small renovation project. *See Shah Affidavit ¶ 11.* He did not relocate his practice; rather, he relocated himself to see his patients at the leased suite located at 2 Dudley Street.[4] *See Shah Affidavit ¶ 11.* This is yet another argument over semantics. The defendant uses the word "relocate" to mislead the Court into believing that Dr. Shah had

[4] Dr. Shah is not claiming any loss of business income prior to the covered loss that occurred on December 21, 2004. More specifically, Dr. Shah is not seeking any business income for the time that he voluntarily stopped seeing patients at the Property during the renovation to the property.

the intent to relocate his practice to another property. However, Dr. Shah's statement was misinterpreted by the defendant. Dr. Shah had to use the leased suite located at 2 Dudley Street to see his patients because the Property was temporarily unavailable as a result of the renovations. *See Shah Affidavit ¶ 11.* Dr. Shah unequivocally states in both his sworn statement proffered by the defendant and his affidavit attached hereto that he intended to reopen his practice at the Property once the renovation had been completed. *See Shah Affidavit ¶ 10.* Dr. Shah had the intent and frankly he had every right to reopen his practice once the renovations were completed.[5] *See Shah Affidavit ¶¶ 10 and 15.* However, the covered loss that occurred prevented Dr. Shah from resuming his practice at the Property. *See Shah Affidavit ¶¶ 15-16.* This covered loss was not repaired until February, 2006, a period of more than one (1) year from the covered loss.[6] *See Shah Affidavit ¶ 16.*

The Policy issued by the defendant clearly states that the defendant:

> *"will pay for the actual loss of "business income" you sustain due to the necessary suspension of "operations" during the "period of restoration", but not to exceed 12 consecutive months."*

*See Defendant's Exhibit C, Building and Personal Property Coverage Form, pg. 13.*

Dr. Shah did in fact suffer an actual loss of business income. *See Shah Affidavit ¶¶ 16 & 18.* In his affidavit, Dr. Shah has stated that he leased the suite located at 2 Dudley

---

[5] The argument by the defendant is perplexing. The plaintiff has not made a claim for damages for the period that he voluntarily moved his practice to another location. There is nothing in the policy that would prevent the plaintiff from resuming operations at his practice at any time. This fact has nothing to do with any of the claims that have been made by the plaintiff.

[6] Dr. Shah is aware that the policy strictly limits the term of the covered loss to a period of twelve (12) months. However the delay in repaying for the repairs to the property are a basis for the plaintiff's breach of good faith claim and this delay has led to additional damages incurred by Dr. Shah.

Street, Providence. *See Shah Affidavit* ¶¶ *15-16.* He had fully intended to let the monthly lease on the 2 Dudley Street suite expire as soon as his renovations were completed. *See Shah Affidavit* ¶ *10.* However, based on the fact that his Property suffered a covered loss that did not allow him to operate his practice at the Property he was forced to continue his monthly lease at the 2 Dudley Street location. *See Shah Affidavit* ¶¶ *15 & 17.* On or about May 2005, he was forced to surrender the monthly leased suite and enter into a new five (5) year lease for another suite located at 2 Dudley Street, Providence, Rhode Island. *Affidavit* ¶ *16.* This was because his Property was still not able to accommodate his medical practice. *Affidavit* ¶ *16.* Dr. Shah had no choice but to mitigate his damages and enter into a new lease or he would have had no place to practice medicine. *See Shah Affidavit* ¶ *15.* Clearly, this expense would not have been incurred by Dr. Shah had he not suffered the loss at the Property. *See Shah Affidavit* ¶ *16.* Dr. Shah has stated in his affidavit that he has suffered other damages, including but not limited to utility bills and the loss of business that resulted from moving his practice to from its location at the Property. *See Shah Affidavit* ¶ *18.* Further, he has stated that he was unable to provide outpatient surgical services that were impossible to perform at the leased suite located at 2 Dudley Street. *See Shah Affidavit* ¶ *19.* This factor alone caused a significant decrease in his gross revenues. *See Shah Affidavit* ¶ *20.*

A summary judgment motion should only be granted if the defendant can make a preliminary showing that no genuine issue of material fact exists. "In determining whether this burden has been met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Nico v. Philip Morris, Inc., 201 F.3d 29, 33 (Ist Cir. 2000).* The

defendant has simply not met this burden. Through his affidavit and the statements made by the defendant, it is undisputed that Dr. Shah has met the conditions precedent to maintaining an action for loss of business income. *See Shah Affidavit ¶ 17.* Dr. Shah suffered a covered loss at the insured Property. *See Shah Affidavit ¶ 17 and Defendant's Exhibit B.* This covered loss resulted in a "necessary suspension" for a "period of restoration" of more than one (1) year. *See Shah Affidavit ¶ 16.* The only issue that remains is to determine whether the Dr. Shah suffered an interruption in business that led to an actual loss of business income. This is the genuine issue of "material fact". "[G]enuine means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party". *Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (Ist Cir.2001) quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (Ist Cir.1995).* In this memorandum, the plaintiff has presented through his affidavit enough evidence to show that the issue of whether he suffered an actual loss of business income is a question of fact and not one ripe for a summary judgment motion. *See Shah Affidavit*. The fact finder in this case should be the determining factor as to whether these damages should be considered an "actual loss" of business income. Therefore, the defendant's motion for partial summary judgment pertaining to the plaintiff's claim for loss of income and business interruption as set forth in Counts One through Twelve of the complaint should be denied.

**C. THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PERTAINING TO THE BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING AND STATUTORY BAD FAITH AS SET FORTH IN COUNTS FOUR THROUGH SIX AND SEVEN THROUGH NINE OF THE PLAINTIFF'S COMPLAINT SHOULD BE DENIED.**

The defendant[7] has moved for summary judgment pertaining to the breach of the duty of good faith and fair dealing (Counts Four through Six) and statutory bad faith (Counts Seven through Nine) claims in the plaintiff's complaint. The defendant links this argument for summary judgment with its argument addressed above in paragraph B and states that "[t]o the extent that Defendant is successful with regard to this portion of its Motion and summary judgment is granted in its favor with regard to the remaining portion of the breach of contract claims then summary judgment is also appropriate with respect to those remaining counts asserting the breach of duty of good faith and fair dealing and statutory bad faith claim. The defendant objects to this to the extent that he restates and refers this Honorable Court to his argument in paragraph B above. The defendant in its memorandum states that plaintiff has not "alleged any additional facts sufficient to support either a common law claim of common law or statutory bad faith". *See Defendant's Memorandum in Support of Motion For Partial Summary Judgment, pg. 13, fn 3*. The plaintiff disagrees with this statement. The plaintiff has alleged the following facts:

> *15. The Defendants have acknowledged coverage for this loss under the policy by compensating Dr. Shah for damage to his building.*
>
> *16. Notwithstanding, the Defendants have knowingly, intentionally and willfully refused without any reasonable basis in fact or law to timely compensate or otherwise make Dr. Shah whole for all his damages sustained as a result of the subject loss. The Defendants have refused to compensate Dr. Shah for property damage, loss of contents, storage costs or for his loss of income attributed to the interruption of his business.*

[7] As the plaintiff has agreed to dismiss the case against Zurich-American Insurance Company and Zurich-American Insurance Company of Illinois, the only defendant remaining in the lawsuit is Maryland Casualty Company.

> *17. Again, Dr. Shah has fully cooperated with his insurer in trying to resolve this claim but the insurer and its representatives have utterly failed to honor the terms of the policy.*

*See Plaintiff's Complaint at pg 3.*

If the plaintiff is given the opportunity to present his breach of contract claim to the fact finder, he will be able to present his witnesses to show that the insured did not provide coverage and/or denied coverage without a reasonable basis in fact or law as alleged in paragraphs 15, 16 and 17 of its complaint. The real issue is that the defendant has never engaged in any discovery to determine the "additional facts" concerning the plaintiff's claims. In a summary judgment motion, the moving party has the burden to prove that no genuine issue of material fact exists. *National Amusements Inc. vs. Town of Dedham, 43 F.3d 731 citing Celotex Corp. V. Catrett, 477 U.S. at 324, 106 S.Ct. at 2553.* The defendant has not provided any affidavits or any statements that would show that the plaintiff's allegations as set forth in paragraphs 15, 16 and 17 of the complaint are not in dispute and therefore its motion for summary judgment should be denied.

## D. THE PLAINTIFF VOLUNTARILY AGREES TO DISMISS COUNT TEN AGAINST THE DEFENDANT.

The defendant has moved for summary judgment as to Counts Ten.[8] Count ten seeks attorney's fees pursuant to *R.I.G.L. §9-1-45*. *R.I.G.L. §9-1-45* provides that:

> *The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court:*
>
> *(1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or*

[8] As the plaintiff has agreed to dismiss the complaint against Zurich-American Insurance Company and Zurich-American Insurance Company of Illinois, Counts Eleven and Twelve are no longer viable counts in the Plaintiff's Complaint.

*(2) Renders a default judgment against the losing party.*

In support of its argument, the defendant asserts that because it has filed an answer and raised affirmative defenses that one cannot say that there is a "complete absence of a justiciable issue of either law or fact. The plaintiff will voluntarily dismiss this count as the case law holds that courts are not allowed to determine the validity of the justiciable issue raised by a party. It is clear that the defendant has raised several issues in both its answer and its motion. All of these issues raised by the defendant were not available to the plaintiff at the time he filed his complaint.

IV. Conclusion

Based on the above, the plaintiff hereby voluntarily agrees to dismiss the complaint against defendants Zurich-American Insurance Company and Zurich-American Insurance Company of Illinois. Further, the plaintiff agrees to dismiss Count Ten against defendant Maryland Casualty Company. Last, the plaintiff believes that there is a genuine issue of material fact with respect to his claim for loss of income and interruption of his medical practice and as such, the defendant's motion for summary judgment involving those issues should be denied.

Plaintiff, Dr. Barry Shah
By and through his Counsel
/s/ Michael J. Lepizzera, Jr.
Michael J. Lepizzera, Jr. #4995
Mlepizzera@lldlawyers.com
/s/ Christian C. Potter
Christian C. Potter, #5359
Cpotter@lldlawyers.com
Lepizzera & Laprocina
301 Metro Center Blvd., #102
Warwick, Rhode Island 02886
(401) 739-7397 (Telephone)
(401) 384-6950 (Facsimile)

## CERTIFICATION

I certify that on this 19th day of November, 2007 a true and accurate copy of the within was filed electronically and it is available for viewing and downloading from the ECF System. Further I certify that that the undersigned were served with a copy of said motion electronically:

Dana Horton #6251.
dhorton@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103
(860) 275-8295 (Telephone)
(860) 275-8299 (Facsimile)

/s/ Christian C. Potter