**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| DR. BARRY SHAH,<br>Plaintiff,<br><br>v.<br><br>MARYLAND CASUALTY COMPANY, ZURICH-AMERICAN INSURANCE COMPANY AND ZURICH-AMERICAN INSURANCE COMPANY OF ILLINOIS,<br>Defendants. | : | C.A. No. 07-016 ML |

**DEFENDANT MARYLAND CASUALTY COMPANY'S REPLY TO PLAINTIFF'S OBJECTION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Maryland Casualty Company ("MCC") hereby submits the instant Reply to Plaintiff's Objection to MCC's Motion for Summary Judgment.

There is little dispute as to most of the underlying facts of this case. There is no dispute that Plaintiff owned the property located at 386 Atwells Avenue, Providence, Rhode Island ("Property"). There is no dispute that said Property was insured under a Policy written by MCC[1] and that said Policy was in full force and effect at the time of the alleged incident. There is no dispute that prior to the Loss that is the subject of this litigation, Plaintiff and his business partner operated a medical practice at two locations, including the Property (which they owned) and a second location at 2 Dudley Street, Providence, Rhode Island (which they rented). There is no dispute that at the time of the Loss, Plaintiff had vacated the Property and had stopped seeing patients at the Property, and was in the process of making general repairs to the building. As Plaintiff explained during his recorded statement, given approximately six (6) weeks after the

[1] By way of his Objection, Plaintiff has agreed to dismiss Counts Two, Three, Five, Six, Eight, Nine, Eleven and Twelve, which were directed toward Zurich American Insurance Company and Zurich American Insurance Company of Illinois.

Loss, he relocated his practice to the 2 Dudley Street location during the course of the repairs and intended to return to the Property upon completion of the repairs if he could afford to buy out his partner's share. If he could not afford to do so, the building would have likely been put up for sale.[2] *See* Recorded Statement of Dr. Barry Shah, dated February 1, 2005, attached as Exhibit A to Defendant's Motion for Partial Summary Judgment, pp. 3-4.

There is also no dispute that on or about December 21, 2004, Plaintiff sustained a Loss at the Property as a result of a pipe or pipes freezing and bursting. This incident caused Plaintiff to sustain damages to his building and contents, for which he made a claim under his Policy of insurance, and for which Plaintiff has been paid substantial sums of money. The remaining contents claim is being submitted to Appraisal, pursuant to the terms of the Policy.

During the course of the adjustment of the Loss, Plaintiff was represented and/or assisted by Public Adjuster Richard Aube. Although MCC acknowledges that Mr. Aube inquired about possible coverage for loss of rental income (which he explained included a claim for potential rental income Plaintiff *could* have sustained had he rented out the Property during the twelve (12) months it took Plaintiff to complete the repairs to the Property), neither he nor Plaintiff ever submitted a formal claim or made a formal demand with MCC for such loss. *See* Supplemental Affidavit of Daniel Sager, ¶¶ 7, 9, attached hereto. In fact, the ***only*** claims that were submitted to MCC at any time after the Loss and prior to the commencement of this lawsuit were for the damages sustained to the building located at 386 Atwells Avenue and the contents therein. *See id.*, ¶ 10. At no time subsequent to the Loss did Plaintiff or his Public Adjuster ever submit any

[2] In support of his Objection to Summary Judgment, Plaintiff now appears to claim that he unquestionably had every intention of returning to the Property to continue his medical practice after repairs were complete. This is in direct contradiction to the content of his recorded statement, which was given approximately six (6) weeks after the Loss, and which was previously provided to the Court as Exhibit A to the Motion for Partial Summary Judgment.

claim for loss of business income, business interruption, storage fees, or any other claims. *See id.*, ¶ 11.

In or about December, 2006, Plaintiff commenced litigation against MCC. Paragraph 16 of the Complaint, which is incorporated by reference into each and every count, alleges:

> Notwithstanding, the Defendants have knowingly, intentionally and willfully refused without any reasonable basis in fact or law to timely compensate or otherwise make Dr. Shah whole for all his damages sustained as a result of the subject water loss. The Defendants have refused to compensate Dr. Shah for property damage, loss of contents, storage costs, loss of income and interruption of the medical practice.

Complaint, ¶ 16.

Upon receipt of the Complaint, MCC, through the undersigned counsel, contacted Plaintiff's Counsel in an effort to discern exactly what damages Plaintiff was claiming, particularly in light of the fact that Plaintiff had to date been paid in excess of $286,000, and no further claims had been presented to MCC for claims stemming from this Loss. Attorney Leppizera indicated to the undersigned that he did not have a complete understanding as to what the full scope of his client's damages were and as such, proposed to have his client make a list of every single item of damages he was claiming and the amount of the claimed loss. The hope and understanding, at least as communicated to the undersigned, was that once Plaintiff provided this list to MCC, MCC could review same and the parties could attempt to resolve the case without engaging in prolonged litigation. After several requests for this information,[3] Plaintiff's Counsel eventually sent a letter dated May 28, 2007 to the undersigned, and delineated the scope of Plaintiff's claim and basis for his legal action. A copy of this letter is attached hereto as Exhibit B. The letter purports to be a "list of outstanding damages" relative to this matter and was

[3] Copies of various electronic correspondence by and between the undersigned and Attorney Christian Potter reflecting Defendant's attempts to clarify the allegations contained in the Complaint and to determine, *inter alia*, the scope of any claim for business income and/or business interruption, are attached hereto as Exhibit A.

written in response to the undersigned's specific request that Plaintiff delineate the scope of his claim, "whether this includes contents, business interruption, lost rents, or anything else." *See* Exhibit A, Electronic Mail sent from Dana M. Horton to Christian Potter, June 6, 2007. As set forth in his letter, Attorney Potter explained that his client's claim was comprised of an additional claim for damages relating to seven (7) pieces of equipment that Plaintiff claimed were damaged as a result of the Loss and loss of income for a twelve month period. Plaintiff's Counsel further explained that the loss of income claim was based upon the fact that it took one year to complete the repairs to the Property and had Plaintiff been able to rent out the Property during that time, at market value, he could have received rental income. The letter explicitly states that "[t]he damage for loss of rental income would amount to . . . $7,200.00 per month and $86,400 per year." *See* Exhibit B, p. 3. Accordingly, there can be no dispute that as of the date of the submission of the May 28, 2007 letter, the scope of Plaintiff's claim, as characterized and presented by Plaintiff, included only a claim stemming from seven (7) pieces of equipment and loss of rental income.[4]

An early Settlement Conference was held on June 26, 2007, before the Honorable Magistrate Judge Robert Lovegreen. Plaintiff, through Counsel, made the same exact representations to the Court and to the undersigned with regard to the scope of his claim for damages. At no time did Plaintiff indicate that his claim involved anything more than a claim for damages to seven (7) pieces of equipment, and for alleged loss of twelve months of rental income at the Property.

---

[4] Specifically, it should be noted that by way of his e-mail to the undersigned of May 30, 2007, Attorney Potter indicated that he was "**writing . . . a letter outlining all of the issues that need to be resolved and specifically listing the equipment that still needs to be replaced and the loss of income that needs to be addressed**." (Emphasis added.) *See* Exhibit A, attached hereto. Moreover, by way of his e-mail to the undersigned of June 6, 2007, Attorney Potter stated with regard to his May 28, 2007 letter: "The information that I have sent you to [sic] is a restatement of the information that your client has had in its possession for a substantial period of time. **I have not provided you with any new information; and therefore, your client should be well aware of my client's claims**." (Emphasis added.) *See* Exhibit A.

Subsequent to the Settlement Conference, MCC inquired as to whether Plaintiff would consider submitting the remaining contents claim to Appraisal, pursuant to the terms of the Policy. The undersigned was advised by Attorney Potter that since the Settlement Conference was not fruitful, Plaintiff may be hard pressed to agree to submit the matter to Appraisal and incur additional expenses in the process. Nonetheless, he agreed to check with his client. Having heard nothing definitive from Plaintiff, MCC made a formal demand for Appraisal on October 30, 2007, pursuant to the terms of the Policy. In the process of setting up and arranging the Appraisal, a process which is still on-going, Attorney Potter indicated that his client also has a claim for storage fees associated with the continued storage of the seven (7) pieces of equipment. Although "storage costs" are referred to in paragraph 16 of the Complaint, this information was not previously presented to MCC, at any time during the adjustment of the Loss or any time thereafter. *See* Supplemental Affidavit of Daniel Sager, ¶¶ 10-11. In fact, to date, MCC has not received a breakdown or even a dollar figure as to what the storage costs have been to date. As set forth in the original Affidavit of Daniel Sager, at no time did MCC ever advise, suggest, require or recommend that Plaintiff continue to store these items. *See* Affidavit of Daniel Sager, dated October 31, 2007, ¶ 21, attached to Defendant's Motion for Partial Summary Judgment. As such, to the extent Plaintiff has continued to store these pieces of equipment since the adjustment of the Loss, Plaintiff is responsible to bear the burden of the associated expense. In an effort to try and resolve this component of the case, however, the parties have agreed to submit the value of the seven (7) pieces of equipment, as well as the reasonable storage fees relating to same, to the Appraisal process.

Against the backdrop of submitting the remaining contents claim and storage fees to Appraisal, MCC understood, upon specific representations from Plaintiff's Counsel, that the *only*

other component of Plaintiff's claim involved a claim of lost rental income. *See* Exhibits A and B. Accordingly, Plaintiff moved for summary judgment as to this portion of Plaintiff's claim, as well as other collateral issues based upon the allegations of Plaintiff's Complaint.[5] As set forth in the Memorandum of Law in Support of Motion for Partial Summary Judgment, the basis for summary judgment as to the loss of rental income claim is, quite simply, that there is simply no coverage for same under the Policy where, as here, there was no intent to rent or actual attempts to rent the Property. Notably, Plaintiff acknowledged in his Objection to the Motion for Summary Judgment that he is not entitled to the loss of rental income allegedly sustained at the Property. *See* Objection, p. 12. For this reason, Defendant urges this Court to grant its Motion for Partial Summary Judgment.

In response to the Motion for Summary Judgment, Plaintiff also attempts to make entirely *new* claims, which were *never* presented to MCC for review or consideration at any time subsequent to the Loss. In his Objection, Plaintiff states that Defendant's argument that Plaintiff is not entitled to loss of rental income is "a very myopic interpretation of the business income damage claim that the plaintiff has presented in his complaint" and argues that the summary judgment motion is a "battle over semantics." The reality of the situation is that *at no time* subsequent to the Loss did Plaintiff *ever* submit any type of claim to MCC wherein he identified that he had a claim of loss of business income or interruption of his medical practice, other than the claim for loss of rental income, as set forth in his letter of May 28, 2007. MCC does not dispute that the Policy, by its terms, allows for certain coverage for the actual loss of business income sustained by an insured due the necessary suspension of operations during the period of

[5] By way of his Objection to Defendant's Motion for Partial Summary Judgment, Plaintiff has agreed to voluntarily dismiss Counts Two, Three, Five, Six, Eight, Nine, Ten, Eleven and Twelve. The remaining Counts before the Court, therefore, are Counts One (Breach of Contract), Four (Breach of Duty of Good Faith and Fair Dealing) and Seven (Bad Faith pursuant to R.I.G.L. § 9-1-33), against MCC only.

restoration, not to exceed twelve (12) consecutive months, subject to the terms, conditions, limitations and exclusions of the Policy. *See* Building and Personal Property Coverage Form, 9S1001, p. 13. A copy of the Policy was attached to Defendant's Memorandum of Law in Support of Motion for Partial Summary Judgment as Exhibit C. However, in this case, *at no time* has Plaintiff ever notified MCC of a claim for such damages, nor has it ever submitted any information or documentation relating to same, other than what appears in his Objection. As stated previously, upon receipt of the Complaint, MCC specifically requested that Plaintiff explain the scope of the damages aspect of his claim and Plaintiff, thought Counsel, explicitly advised MCC that he was seeking recovery under the Policy for seven (7) additional pieces of equipment and twelve (12) months of lost rental income. *See* Exhibits A and B. *At no time* did Plaintiff, individually, through Counsel or through his Public Adjuster, ever indicate that he intended to make a claim for lost business income, business interruption, or for the storage fees associated with the continued storage of the equipment. *See* Supplemental Affidavit of Daniel Sager, ¶ 11. As such, MCC has never had a chance to investigate and/or evaluate these claims, in light of the terms, conditions, limitations and exclusions of the Policy.

The Policy provides, in pertinent part:

IV. LOSS CONDITIONS

* * *

C. Duties In The Event Of Loss Or Damage

1. In the event of loss or damage to Covered Property, you must:

* * *

b. Give us prompt notice of the loss or damage. Include a description of the property involved.

* * *

c. As soon as possible, give us a description of how, when and where the loss or damage occurred.

d. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. . . .

e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

f. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. . . .and permit us to make copies from your books and records.

h. Cooperate with us in the investigation or settlement of the claim.

Building and Personal Property Coverage Form, 9S1001, p. 18. A copy of the Policy was attached to Defendant's Memorandum of Law in Support of Motion for Partial Summary Judgment as Exhibit C.

Given these facts, it is disingenuous for Plaintiff to represent to the Court that he has "fully complied with the terms and conditions of the Policy and . . . has also fully cooperated with the defendants' investigation of the Loss." Plaintiff's Objection, p. 6. Moreover, it is incomprehensible how Plaintiff can allege that Defendant MCC is in breach of contract, that MCC has acted in bad faith and failed to comply with the common law duty of good faith and fair dealing with respect to this Loss, when Plaintiff has failed to properly and adequately present and document his Loss to MCC. Plaintiff's failure to comply with the terms and conditions of the Policy in this regard has handicapped MCC from having a complete understanding of Plaintiff's claim from which it could then perform its investigation. Query how MCC can be in

breach of contract for claims that were *never* submitted to it for review and consideration in the first instance.

Plaintiff also claims at page 12 of his Objection that "[t]he fact that Dr. Shah had intended to reopen his practice at the Property and was unable to do so because of the 'necessary suspension of operations' during the 'period of restoration' is the 'material fact' that is not in dispute in this matter." MCC respectfully disagrees with this point. Dr. Shah testified during his recorded statement, which was taken only weeks after the incident, that he would only be able to relocate his practice to the Property if he could afford to buy out his partner's share of the building. This is why, prior to the Loss, he and/or his partner had arranged for a property appraisal to be done to the Property so they would have some idea as to its value. He stated, under oath, that if he could not afford to buy out his partner's share, the building would likely have been put to sale. *See* Recorded Statement of Dr. Barry Shah, dated February 1, 2005, attached as Exhibit A to Defendant's Motion for Partial Summary Judgment.

In addition to misrepresenting his claim to the Court, Plaintiff has also pointed out that the discovery deadlines have passed and Defendant has never engaged in any discovery in this case. Although this may be true, Defendant did not engage in any discovery because in response to a request that Plaintiff explain and break down the scope of the claims as presented in the Complaint, Plaintiff identified the claim as including only seven (7) pieces of equipment and a claim for loss of rental income. *See* Exhibits A and B. Armed with this description and explanation of Plaintiff's claim, Defendant did not identify a need to engage in any discovery beyond the information set forth in Plaintiff's May 28, 2007 letter, in that Defendant had already performed an investigation and analysis of the equipment at issue and Defendant concluded that there was no coverage for the claim of lost rental income, as presented. Had Plaintiff identified

at that time, more than four (4) months prior to the expiration of the discovery deadline, that he was also intending on making claims for lost business income and business interruption, separate and apart from the claim of lost rental income, certainly Defendant would have taken steps to further delineate the scope of Plaintiff's claim, so as to understand the nature and scope of said claim and to investigate said claim, whether by way of deposition, written discovery, Examination Under Oath, or some combination thereof. To the extent that Plaintiff is now, nearly three (3) years after the date of loss, presenting new claims for damages to Defendant, and to the extent Plaintiff will be permitted to do so, Defendant must specifically request additional time to investigate such claims, which will likely include an opportunity to engage in written discovery, conduct depositions and arrange for an expert's review, as needed. Accordingly, a Motion to Re-Open the Discovery Orders of this Court is being filed on even date herewith. In addition, Defendant must respectfully reserve the right, upon proper and full presentation of Plaintiff's new claims of damages and investigation of same, to amend its Answer and Affirmative Defenses, as there may be certain additional defenses that will need to be raised in this case.

Plaintiff also suggests in his Objection that MCC has mischaracterized the relocation of Dr. Shah's practice to the 2 Dudley Street location. Plaintiff's own words speak for themselves. In the statement that Dr. Shah provided to MCC weeks after the incident, he indicated that prior to the Loss, he had moved his medical practice to the 2 Dudley Street location and had stopped seeing patients at the Property. *See* Exhibit A attached to Motion for Partial Summary Judgment, p. 3. This appears to be an undisputed statement of fact.

Plaintiff also argues at page 13 of his Objection that he has sustained a loss of business income and business interruption which, if allowed, will need to be properly presented to

Defendant and investigated, in light of the terms, conditions, limitations and exclusions of the Policy. As a part of this analysis, Defendant will need to engage in formal and informal fact gathering, so as to investigate the validity of these new claims. This inquiry will include an investigation into whether Plaintiff properly and adequately mitigated his damages at all times subsequent to the Loss.

Moreover, Plaintiff claims he sustained other damages, "including but not limited to utility bills and the loss of business that resulted from moving his practice to [sic] from its location at the Property." First and foremost, Dr. Shah has indicated that he moved his practice from its location at the Property to the 2 Dudley Street location *prior* to the Loss. Second, and more importantly, this is the first time MCC has received notification of such claims. Plaintiff has never previously identified these issues as claims for damages under the Policy and similarly has never submitted any information of any kind supporting such claims. Defendant will need to engage in discovery with respect to these new claims as well.

Plaintiff also claims that "[i]f the plaintiff is given the opportunity to present his breach of contact claim to the fact finder, he will be able to present his witnesses to show that the insured did not provide coverage and/or denied coverage without a reasonable basis in fact or law as alleged in paragraphs 15, 16 and 17 of its complaint." Objection, p. 17. It should be noted for the record that at no time did MCC "not provide coverage and/or deny coverage" to Plaintiff. Upon receipt of Plaintiff's claim for damages, which included a claim for damages to building and contents, MCC investigated said claim and ultimately paid Plaintiff over $286,000.00. The remaining dispute as to seven (7) pieces of equipment and the reasonable storage fees therefor is being submitted to Appraisal. Although the Public Adjuster may have inquired as to a loss of rental income claim, no formal claim or information pertaining to same

was ever submitted. *See* Supplemental Affidavit of Daniel Sager, ¶ 9. Similarly, no claims for loss of business income or business interruption were ever made to MCC at any time subsequent to the Loss. *See id.*, ¶ 11. A claim that is not submitted cannot be denied.

The real issue before this Court is that Plaintiff is attempting to raise, at this late juncture, brand new claims of damage stemming from the Loss, which have never before been presented to Defendant, its agents, servants, representatives or counsel. Defendant notes in his Objection that "[o]nce an insured has met the burden of establishing that he had a direct property damage loss that was covered by his/her/its insurance, the insured must then prove that he/she/it had an actual loss of "Business Income" as defined under the policy." Objection, p. 10. In this case, Defendant has failed to do so. Even Dr. Shah's Affidavit submitted in support of his Objection is devoid of any statement wherein he asserted that he put MCC on notice of his claims of loss of business income and/or business interruption. The Affidavit fails to contain such a statement, quite simply, because Dr. Shah *never* submitted or presented such claims to his insurer. With respect to the Motion for Partial Summary Judgment, Plaintiff has conceded in his Objection that he is not entitled to damages for loss of rental income. Accordingly, Defendant urges this Honorable Court to grant its Motion for Partial Summary Judgment. Simply put, MCC cannot be found in breach of contract for claims that Plaintiff has never previously presented for consideration. Also, it cannot be said that MCC acted in bad faith (statutory or common law) in not acting upon claims that were never presented and instead, were presented for the first time by way of Plaintiff's Objection to Summary Judgment. As such, Defendant respectfully requests that the Court grant its Motion for Partial Summary Judgment for the reasons set forth in its Motion and Memorandum of Law.

MARYLAND CASUALTY COMPANY
(Improperly named as ZURICH-AMERICAN INSURANCE COMPANY AND ZURICH-AMERICAN INSURANCE COMPANY OF ILLINOIS)

By Their Attorneys:

/s/ Dana M. Horton
Dana M. Horton, of
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: dhorton@rc.com
RI Bar No. 6251

Dated: December 3, 2007

**Certificate of Service**

I hereby certify that on December 3, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties noted below by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing for viewing and/or downloading through the Court's CM/ECF System.

Michael J. Lepizzera, Jr., Esq.
mlepizzera@lldlawyers.com
RI Bar No. 4995
Christian Potter, Esq.
cpotter@lldlawyers.com
Lepizzera & Laprocina
301 Metro Center Blvd., Suite 102
Warwick, RI 02886
(401) 739-7397 (Telephone)
(401) 384-6950 (Facsimile)

/s/ Dana M. Horton
Dana M. Horton, Esq.
RI Bar No. 6251